IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SUSANNAH O'BRIEN, | |
| Plaintiff, | |
| v. | Case No._____ |
| RUTHERFORD COUNTY BOARD OF EDUCATION, JAMES SULLIVAN, *in his individual capacity* And in his official capacity as Director of Rutherford County Schools, | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES<br><br>**JURY DEMANDED** |
| Defendants. | |

## COMPLAINT

Plaintiff, Susannah O'Brien, submits the following Complaint against Defendants, the Rutherford County Board of Education and James Sullivan in his personal and official capacity as Director of Rutherford County Schools:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this cause of action pursuant to 28 U.S.C. §§ 1331 and 1343 because the case presents federal questions arising under the First Amendment to the United States Constitution and 42 U.S.C. § 1983.

2. 28 U.S.C. §§ 2201, 2202 confers jurisdiction on this Court to grant declaratory relief.

3. All parties reside or operate within this judicial district. The acts and omissions giving rise to this Complaint occurred within this district. Accordingly, this court is the proper venue for this litigation pursuant to 28 U.S.C. § 1391(b).

1

**PARTIES**

4. Plaintiff Susannah O'Brien is an adult resident of Rutherford County, Tennessee.

5. Defendant Rutherford County Board of Education (the "Board") is a governmental entity that operates the Rutherford County Schools, including Roy Waldron Elementary School. The Board is a "person" within the meaning of 42 U.S.C. § 1983 and operated under the color of law as to the allegations set forth herein.

6. Defendant Dr. James Sullivan is the Director of Rutherford County Schools, appointed and vested with authority by the Board. Dr. Sullivan serves as the chief executive officer for Rutherford County Schools. His authority, delegated to him by the Board, includes the power to terminate the employment of teachers. As to the allegations of this Complaint, Dr. Sullivan acted under color of law and was a "person" within the meaning of 42 U.S.C. § 1983. Dr. Sullivan resides in Tennessee and his acts and omissions alleged herein took place within this District. He is sued in both his individual and official capacities.

**FACTS**

7. Plaintiff has been an elementary school teacher for approximately 25 years, spending her career teaching in the Murfreesboro City Schools, Rutherford County Schools and Metro Nashville-Davidson County Schools.

8. Plaintiff graduated from the Virginia Commonwealth University with a degree in elementary education and additionally possesses a certificate to teach youth learning English as a Second Language.

9. Throughout her decades long teaching career, Plaintiff has received several performance reviews and appraisals and has never received a less than satisfactory rating.

10. No school system has ever disciplined Plaintiff or otherwise requested she undergo corrective action.

11. Prior to the beginning of the 2025-2026 school year, Plaintiff had been teaching in the Metro Nashville-Davidson County Schools but returned to Rutherford County Schools upon the Rutherford County Schools' request.

12. For the 2025-2026 school year, Plaintiff taught elementary children at Roy Waldron Elementary School in LaVergne, Rutherford County, Tennessee.

13. On September 10, 2025, public political commentator Charlie Kirk was shot and killed while speaking publicly.

14. Mr. Kirk was a divisive public figure. His public comments greatly upset some people while others found him inspiring. Examples of controversial public statements made by Mr. Kirk include the following:

    a. Mr. Kirk opined that he considered stoning gay people to be "God's perfect law when it comes to sexual matters."

    b. Mr. Kirk, after a mass shooting at a school in Nashville, Tennessee, said that "some gun deaths" every year were "worth it" to preserve Second Amendment rights.

    c. Mr. Kirk opposed policies he felt favored minorities and women, and described Supreme Court Justice Ketanji Brown Jackson as a DEI hire who did "not have the brain processing power to otherwise be taken seriously. [She] had to go steal a white person's slot to go be taken somewhat seriously."

15. Mr. Kirk's public statements and killing were matters of great public concern. President Trump ordered flags flown at half-staff in response to Mr. Kirk's assassination. The news of the killing, theories about the suspect and his motives, reactions to the killing and discussion of Mr. Kirk's views dominated the news and social media.

16. Part of the firestorm following Mr. Kirk's killing came from anonymous, public and political figures who urged repercussions against anyone who expressed any views questioning Mr. Kirk's political views or insufficiently grieving his death.

17. Within hours of Mr. Kirk's death, websites and social media pages appeared requesting information about anyone who ran counter to the pro-Kirk point of view. These websites encouraged people to report any social media posts made by teachers, firefighters or others deemed offensive to Mr. Kirk's legacy, including the names, addresses, images, employers and other information so steps could be taken to punish such people.

18. The United States Senator for Tennessee, Marsha Blackburn, got in on the act. She publicly called for a schoolteacher in Williamson County to be fired and described her as "vile." She called for the termination of multiple university professors and has admitted she personally telephoned decision-makers to urge educator terminations.

19. Plaintiff has a Facebook page. In the days following Mr. Kirk's death, on her own time and from her own devices, Plaintiff shared posts from public creators that related to Mr. Kirk's killing. Her posts did not contain her own commentary.

20. Plaintiff's Facebook page was and is set to be viewed by "friends only." Plaintiff's Facebook profile did not disclose her employer or other information connecting her to Rutherford County Schools.

21. Plaintiff's Facebook friends did not and do not include any current students, who are all very young children unlikely to have Facebook access, or parents of current students.

22. On September 17, 2025, one week after Mr. Kirk's death, Plaintiff's school principal summoned her to meet with Mr. Brian Sears, a human resources director for Rutherford County Schools.

23. Mr. Sears presented Plaintiff with two Facebook posts related to Mr. Kirk and she confirmed that she had published the posts. The posts were the following:

5





The posts are also attached as Exhibit A hereto.

24. Upon confirming that Plaintiff had shared posts related to Mr. Kirk's killing, Mr. Sears informed plaintiff that Defendants were immediately placing her on leave without pay pending "investigation."

25. On September 26, 2025, Mr. Sears sent Plaintiff an email asking "Can you please send a statement of your accounting of the social media posts we discussed at RWS on 9/17/25 (and shown below)" with screenshots of the posts pictured above. Exhibit B.

25. On October 1, 2025, Mr. Sears sent Plaintiff an email confirming that Defendants had terminated her employment as an elementary school teacher with Rutherford County Schools, effective immediately. Exhibit C.

26. Mr. Sears email attached a letter signed by Defendant Dr. Sullivan (later received as a hard copy via mail). The letter was also dated October 1, 2025, and confirmed her "dismissal from [her] position as teacher with the Rutherford County Board of Education effective October 1, 2025."

27. Defendant Dr. Sullivan's letter made it crystal clear that Defendants' decision to fire Plaintiff was based solely on her Charlie Kirk posts: "This decision is based on your insubordination and professional misconduct ***related to violations of the RCS Employee Use of Social Media and Personal Websites policy***" (emphasis added). Later in the letter, Defendant Dr. Sullivan reiterated that Defendants fired Plaintiff because of her Facebook posts outside of school: "You displayed unprofessional posts on your social media platform that are not in alignment with the expectations as an educator of Rutherford County Schools." Exhibit D.

28. Defendant Dr. Sullivan's letter did not explain how the posts were "unprofessional" or "not in alignment with the expectations as an educator."

29. Defendant Dr. Sullivan was personally responsible for Plaintiff's termination.

30. Plaintiff removed the Facebook posts after her conversation with Mr. Sears on September 17, 2025. They had been on her "friends only" page for only a few days.

31. Much like prior Facebook posts Plaintiff had made related to political matters without interference by or consequences from Defendants, Plaintiff's Facebook posts about Mr. Kirk received little attention. A few fellow teachers "liked" her posts but nobody commented negatively or otherwise responded on her Facebook page or through other means.

32. The posts had not, and still have not, caused any disturbance in her classroom or otherwise. The posts did not disturb the harmony of her relationships with other people at the school. No parent said anything to Plaintiff related to the posts. No teacher discussed the posts with Plaintiff.

33. Plaintiff's termination, rather than her posts, did disrupt the school. The school principal cried when Defendants placed Plaintiff on leave without pay. Plaintiff has been removed from the classroom drawing attention to her posts that did not otherwise exist. Her students endured a teaching change early in the school year.

34. Members of Defendant Rutherford County Board of Education expressed their views on Mr. Kirk and his killing at their public meeting on September 11, 2025, including the following:

a. Board member Butch Vaughn led a public prayer for Mr. Kirk, his family and supporters.

b. Board member Caleb Caldwell indicated that he had handed out buttons before the meeting expressing support for Mr. Kirk. During the meeting, Mr. Caldwell also offered to personally assist in setting up local chapters of Turning Point USA in Rutherford County Schools. Turning point USA is Mr. Kirk's controversial organization that purports to advocate for free speech by holding debates on college campuses.

c. Another Board member, Frances Rosales, praised Dr. McPhee, president of Middle Tennessee State University, for firing an educator who had made social media posts deemed insensitive.

See https://www.youtube.com/watch?v=MEYWZpfpeao

35. There are 5 members of the Defendant Board, so a majority spoke positively about Mr. Kirk and one explicitly expressed support for firings like Plaintiff's.

36. Plaintiff has seen countess political posts, often related to sensitive matters, from educators and other employees of Defendant Board. Plaintiff herself had previously made posts about political matters, sometimes controversial. None of these posts were ever flagged for discipline and Plaintiff was never told there was anything inappropriate about commenting on public matters no matter how controversial, so long as she did so on her private time and on her private devices.

37. Mr. Kirk's political advocacy and his death represent issues of public concern. School shootings and race in America are issues of public concern. The

Facebook posts relied upon by Defendants to fire Plaintiff addressed these issues of public concern.

38. Plaintiff's Facebook posts related to Mr. Kirk had nothing to do with her employment and in no way criticized her superiors or their policies.

39. Defendants fired Plaintiff directly and exclusively because of her exercise of her free speech rights.

40. Plaintiff made her Facebook posts as a private citizen and not in connection to any of her professional duties or responsibilities as an employee of Defendant Board.

41. Plaintiff's posts did not hinder, have not hindered and are not likely to hinder Plaintiff's ability to do her job or the proper functioning of her school.

42. Plaintiff's posts did not interfere in any way with the Board's or her school's ability to perform its mission or the educational or workplace environment of the school.

43. As a result of her termination, Plaintiff has suffered emotional, financial and other damages. She has deleted her expressive content and silenced herself on all issues of public concern because she fears she will no longer be able to pursue her profession.

44. Defendants termination of Plaintiff was malicious and/or made with callous indifference to her rights and was intended to silence her and others similarly situated.

## CAUSE OF ACTION

11

## **RETALIATION FOR ENGAGING IN PROTECTED SPEECH**

45. All prior allegations are incorporated herein by reference.

46. Defendants' suspension and termination of Plaintiff's employment violates the First Amendment to the United States Constitution.

47. Plaintiff's posts contained expressive content on matters of core public concern made in her role as a private citizen.

48. Plaintiff's posts were not related to her employment by the Board.

49. Defendants explicitly confirmed in writing that Plaintiff's exercise of her speech rights was the sole reason for her firing.

50. Plaintiff's exercise of her speech rights as a private citizen did not disrupt her teaching. The posts did not undermine her relationships with students, parents, staff or leadership of her school. Plaintiff's posts caused no disruption whatsoever and she continued to teach as usual after she made the posts until Defendants' removed her from her school. There has been no disruption to the Board or Plaintiff's school at all, except to the extent that firing a qualified educator causes disruption.

51. Defendants targeted not only the content of Plaintiff's speech, but also a specific viewpoint. While Defendants themselves have engaged in speech supporting Mr. Kirk, they have silenced Plaintiff for appearing to disagree with that point of view. Accordingly, their viewpoint discrimination is subject to the strictest scrutiny.

52. To the extent Defendants received complaints about Plaintiff's posts, those complaints are greatly outweighed by her right as a private citizen to comment upon matters of public concern.

53. To the extent that Defendants received complaints about the posts from those outside of their district or political agitators, such complaints carry no weight in balancing Defendants' interests in efficiency and harmony against Plaintiff's free speech rights.

54. To the extent Defendants received direct contact from politicians or felt indirect pressure from such politicians or political pundits, these external influencers demonstrate the public nature of the content of Plaintiff's expression, not disruption to Defendant's mission.

55. Plaintiff is entitled to declaratory, injunctive and monetary relief under 42 U.S.C. § 1983. She also seeks her attorney fees and costs under 42 U.S.C. § 1988.

**RELIEF REQUESTED**

1. A Declaration that Defendants' suspension and termination of Plaintiff unconstitutionally retaliated against Plaintiff's exercise of First Amendment rights;

2. A Temporary Restraining Order, Preliminary Injunction and Permanent Injunction that restrains and enjoins Defendants suppression of and retaliation against Plaintiff's speech, fully reinstates her employment under the conditions she enjoyed before her firing, and correction of her personnel record to expunge any materials related to the adverse employment action;

3. An award for back pay and benefits;

4. An award of compensatory damages for violation of her constitutional rights pursuant to 42 U.S.C. § 1983;

5. An award for punitive damages against individual capacity Defendant Dr. Sullivan because for his intentional and/or callously indifferent violation of her constitutional rights;

6. An award for costs and attorney fees as available by law including under 42 U.S.C. § 1988; and

7. An award of pre and post-judgment interest on any damages awarded to Plaintiff;

8. An award of such other relief as the Court deems just and appropriate.

9. Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

/s/ Mark J. Downton
The Law Office of Mark J. Downton
1025 Ashmore Drive
Nashville, Tennessee 37211
(615)275-6480
lawyerdownton@gmail.com

Attorney for Plaintiff

s/ Frank Ross Brazil
Frank Ross Brazil
Brazilclark, PLLC
760 E Argyle Ave.
Nashville, TN 37203
frank@brazilclark.com
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

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the factual allegations set forth above are true and correct to the best of my knowledge, information and belief.

/s/ 
Susannah O'Brien

14